We'll hear argument in the last case of this sitting, which is United States v. Verduzco. Good morning, Your Honors. May it please the Court, my name is Timothy Scott, Federal Defenders of San Diego, on behalf of the appellant, George Verduzco. There are three reasons why we seek reversal in this case. First, through repeated evidence and repeated argument, the jury was asked to conclude that Mr. Verduzco had a propensity for drug smuggling. Secondly, the district court intruded on the fact-finding process and on jury deliberations in that, in responding to a jury's note during deliberations, the district court volunteered additional law and, indeed, volunteered an application of law to fact that went beyond the jury's question and, in fact, steered the verdict and steered the conviction. And then our third assignment of error is that the district court erroneously found a discovery violation and excluded a key defense witness under Rule 16 when, in reality, no discovery violation occurred and, even if one did occur, exclusion was not the proper remedy. For each of these errors, and certainly for all of them together, we ask for reversal. The first argument, Your Honors, has to do with the use of the prior under 404B and 609. Now, we maintain and stand by the argument that this evidence of a prior should not have been admitted at all under 404B or under 609. However, even if one were to find, or this court were to find, that under 404B, under one of the purposes that the government is now putting forward to use this evidence, or even under 609, even if it was admissible somehow, it's our contention that it's the use of this evidence. Okay, but didn't you raise the issue of duress? We did. Certainly we did. Okay, so isn't it relevant to the question of intent? Well, again, in the manner of saying intent, the question is legal intent. Intent is only general. The government needs to prove general intent of Mr. Produsco to cross a load of marijuana. Mr. Produsco, in fact, admitted that he had the general intent to bring it across the border. The question raised by duress is did he have an excuse, a legal excuse for this conduct. So I see what the court is saying in terms of intent, but legally speaking, general intent. And credibility. Isn't it relevant to the issue of credibility? And that's a separate question. That's what the district court came out on under 609. Here's where I'm having some struggling. Maybe the court was prescient. She says you have your appellate issue, and here we all are. But if it came in under 609, am I correct that it would simply come in as, you know, have you been convicted of a felony? Yes, I've been convicted of a felony. And it wouldn't be the circumstances, correct? Exactly so. Particularly. If you come in under 404, if you are admissible, or the conviction and events are admissible under 404, then you have kind of the whole patina of what happened. Would that be correct? Under 404B, I think they would be, under 404, they would be permitted to paint a little bit more of a picture of what happened, to the extent that there's a precise evidential hypothesis that's under the Mayans' case for why it should be admissible in the first place. And I'll have to ask the government, I guess, but I am having trouble understanding how a claim of duress under the current circumstances is somehow implicated by some other drug smuggling where there wasn't a claim of duress and it just was a regular drug charge. And so then I think the court, Judge Huff was trying to answer that, and she then cited intent and all of the other things that are listed in the evidence rule. So maybe you could walk us through those and explain to us how, in your view, they do or don't fit into those words in the rule. Very well. Under 404B, as I recall, it was admitted to show knowledge, intent, opportunity, initially motive, but that was not submitted to the jury, plan, I believe, and then sort of a catch-all, quote-unquote, lack of duress. And as I argued in the briefs, knowledge and intent are elements, and I think that they're elements of the offense, general intent, and the knowledge of the marijuana in the vehicle. The reason it shouldn't have been admitted is because we didn't contest either of those facts. It literally added no probative value to the case because Mr. Produsco himself took the witness stand and said, of course, I knew the marijuana was there, and I had general intent to bring it into the country. Now, the problem with the rest of that laundry list, if you will, and I don't mean to be pejorative when I say it, but there's just so many purposes that the jury was invited to consider that it left very little that it couldn't consider it for. But setting that aside for a moment, plan, motive, opportunity, all of those things, including lack of duress, cannot stand unless one uses the premise, because he did it before, it's less likely that he did it again under duress, or because he did it before and had a plan to do it before, he had a plan to do it this time. Propensity is simply a key link in that chain of logic for all of those other purposes that the government argued it should be admissible for. And so for that reason, under all of those other reasons, cannot support admission of this evidence under 404B. But I think even... Why doesn't the Hearst case govern? Hearst does not govern primarily because factually the facts in Hearst were these. There was a duress defense raised, and the defendant asserted that a group of people had forced her to commit the innocent offense. In that case, in the Hearst case, it turned out that that very same group of people, the defendant had voluntarily undertook a prior offense with. So it was clean, factual impeachment, if you will, that she wasn't acting under duress because she voluntarily acted with the very same group of co-conspirators, if you will. Now, in this case, in Mr. Produsko's case, there's no allegations and no evidence at all to suggest that there's the same group of people. So to bring in the old case does nothing to rebut the duress defense in the same way because there was no allegations or argument that he voluntarily acted with that very same group of people. So that's why we would argue that Hearst doesn't apply. Now, I think to answer a question that the court had at the very beginning, why doesn't it simply go to credibility? And this ties into my next point that it was the use of this prior that was most disturbing and perhaps is the clearest violation of Mr. Produsko's rights. It was – and that's why I say even if this was somehow admissible, either under 404B or under 609, the way it was used was prejudicial. The judge asked a few moments ago, wasn't it admitted under 609A1 and shouldn't it have been simply the fact of conviction that it was a felony and that you were convicted? First off, the district court didn't use 609A1 at all. It didn't apply any of the five prongs under Cook. It didn't weigh prejudice against probative value. It didn't apply the governing case law to show why it should have come in under 609A1. This prior was so similar to the instant offense that the prejudice was increased. The case law bears out under 609A1 that the more similar a prior is to the instant offense, the less admissible it is. That's under Jimenez and I believe under Wallace, the 609 cases. What the district court should have done if it was inclined to bring in the prior on the issue of credibility was to use the five prong test set forth in Cook, determine each of those five prongs, and perhaps most importantly, determine the extent to which this is too similar to the charged offense to be properly admitted under 609A1. What it should have done if it was inclined to allow Mr. Verdusco to be impeached with this information would be to sanitize it, as I said before, just by the fact that there was a prior,  But because it was coming in under 404B, at least that's all the discussion in the transcript, then there wasn't the need to sanitize it in the judge's view, correct? I suppose so in the sense that the jury was going to have some indication of the facts of the prior offense. But again, instead what occurred on cross-examination was a fact-by-fact and point-by-point characterization of how similar the two offenses were. And this did nothing other than argue propensity. And this is on pages 152 and 153 of the ER where the prosecutor says, You were arrested, right? Right. Same point of entry? Right. Marijuana? Correct. 75 pounds? Right. And just step-by-step walk the jury through exactly how similar this offense was to the last one. Similarly, in closing argument, the prosecutor made the argument that, And he's the driver this time, just like he was the driver of that vehicle two years ago when there was 75 pounds of marijuana found at the same port of entry under virtually identical circumstances. And so it's, again, inviting the jury to conclude that it was propensity that carried the day and that because Mr. Berdusco did it before, it was less likely that he did it this time under duress. And, again, propensity is the only way that that argument holds water. If, leaving aside the jury instruction and the Rule 16 issue, if we were to conclude that there is a 404B violation, how does that fit into the harmless error analysis? I think that the court would have to conclude that it was harmful error. I think that the court would have to conclude that based on the number of arguments to this end that were made and based on the way that it was argued to the jury, by that I mean both the style, the substance of the arguments, the substance of the evidence, but also the sheer repetition of it, I would argue that the court should not find that to be harmless error because, in fact, it pervaded, it permeated the entire trial for Mr. Berdusco through his cross-examination, through the closing arguments, and even in the government's case-in-chief. So we would suggest that it's certainly harmless error under those facts. Now, the second point is the jury instruction issue. The district court received a note from the jury. The jury wanted guidance on one discreet and simple question. Should they use an objective standard or should they use a subjective standard in determining whether there was a reasonable opportunity to escape? It's very important to point out that the jury did not ask of the district court, we'd like some more help with the meaning of the word reasonable or what may or may not be reasonable under these circumstances, or even, more specifically, the fact that Mr. Berdusco might have reported these threats to the authorities, how does that affect the reasonableness analysis? The jury didn't ask any of those things at all. It simply wanted to know objective or subjective. Instead, what the district court did is say that it was an objective standard with a subjective component to it. And I think, in fairness, that's probably pretty close to a restatement of the law, and I think that's probably pretty accurate. But then what it did is say, the district court said, you can consider whether one in the defendant's position, Mr. Berdusco, might believe that reporting the matter to the police did not represent a reasonable opportunity of escape. So it sets out factually what the defendant's testimony was and what his theory of the case was. This is ER page 31. Then what the district court, after saying factually what Mr. Berdusco's claim is, said, however, the opportunity to escape must be reasonable. Generally, once the defendant has reached a position where he can safely turn himself in to the authorities, he will have a reasonable opportunity to escape the threat and the harm. That so far exceeded what the jury asked that it really steered the verdict. It told them. But taken by itself, is that an improper interpretation of Ninth Circuit law? What it is, it is literally lifted out of the consensual Pachon opinion. So we would certainly concede that that is verbatim a line from a published opinion. However, in this context, it's misleading because consensual Pachon does not hold that a person who has received threats and who doesn't report the threats to the authorities doesn't get a duress defense. In fact, it reversed the district court for failing to allow the defendant to present a duress defense under similar and analogous facts. Moreover, consensual Pachon is not a jury instruction opinion. It doesn't say that this is a proper way to charge the jury. It simply says that someone in consensual Pachon's position, which we argue, of course, is very similar to Mr. Berdusco's circumstances, does get. Did the judge submit that proposed answer, the interrogatories to the lawyers, or weren't they there, or what? No, we were there, and we objected very strongly to that instruction. I tried to make the best record I could and told the judge that this is tantamount to a directed verdict. And, indeed, three minutes after the judge submitted this supplemental instruction, the jury convicted. A duress is a tough defense in any event, but go ahead. So by giving that application of loss of fact, the judge really did two things. At first, inform the jury of its estimation of the evidence. It said that it didn't think that it applied under these facts, and it also made the government's best argument for them that he should have gone to the authorities. The problem we have with that is that we had already closed evidence. There was nothing else that I could do to point out our best instructions or our best arguments to the jury, and that was the last word. The Ballenbach decision, the Supreme Court case, says that the judge's last word is apt to be the final word, and that's exactly what happened here. The judge's final words to the jury did, indeed, steer the verdict, and it did lead the jury to convict Mr. Berdusco. The third and final argument has to do with the expert under Rule 16. And again, very briefly, factually, the judge found that there was a discovery violation, and it did that based on one, I would submit, very small, and at least on the defense attorney's part, an innocent error. There was no intent to mislead the government or to gain tactical advantage, and it used this Rule 16 violation or what it deemed a Rule 16 violation to exclude the expert entirely. And very briefly, we would submit that there wasn't a discovery violation because there was no information that the government lacked. The government didn't raise that issue. They didn't say that they were prejudiced in any way. And even if there was some sort of a violation, exclusion of an expert is the most drastic remedy that is contemplated by the law, and it's only appropriate when there's bad faith or when there's some willful intent. I read that. I would agree that's a good statement of the law, but the way I read the judge's ruling was that even if it's a discovery violation, that there were all these other reasons like your client has lived in the United States a couple of years, went to high school in the United States. You don't really need the Tijuana culture to tie him in here because he essentially comes from a United States background. And so I thought she had two or three other reasons that we should look to, or do you think we're not supposed to look to her other alternative reasons? Well, I think initially the Court made it clear by saying primarily on the Rule 16 violation that that was why she excluded the expert. So I would argue that that already is an abuse. And maybe she thought better of that. Perhaps. Perhaps. She better give a couple other reasons. It seems that way. So we would argue that this Court should look at the reason that she did exclude the expert instead of … She had a downward hearing on this. Absolutely. And time and again I asked for that, and I asked the district court to hold a hearing to let me lay the foundation that she sought to allay her concerns about what she perceived, what the Court perceived as factual discrepancies. So why do I get the Court's ruling excluding this? Was it on 403 or both 403 and the discovery violation? It seems that she said Rule 16 primarily. That was the reason she was excluding the expert. And then there was a backup reason. She did say 403 and then said that there were some concerns. We absolutely asked for a downward hearing. And if there were factual questions about the fact that Mr. Produsco had lived in the United States for two years or that he had attended school there … Was the expert in the courtroom? He was not at that point. He was on call telephonically. And I'd asked … What's the proof that you would have induced? Is that in the record? We did give an offer of proof. I included the expert's resume. I included the letter that I wrote to the government. And then I filed an additional offer of proof, doing the best I could. But, frankly, I couldn't say it as well as he could say it. And, more specifically, he would have had the opportunity to explain under cross-examination why his testimony was relevant, why he felt it could be applicable to Mr. Produsco. And he did have answers to all those questions. Ultimately, 702 in Daubert is not supposed to circumvent the jury process. It's not supposed to serve as a substitute for cross-examination. It has to be helpful to the jury. It does. And we just can't know whether it would have been helpful, how it would have been helpful, because we were refused a Daubert hearing and the ability to make that record. I think the cases have been pretty liberal, allowing the government to put on policemen and other experts on drug culture. Exactly. And this is the same thing on the reverse side. But Judge Huff did give you the direct instructions. So you did have that defense. He was questioning it for a while. Correct. Yes and no. We were able to present that testimony, and we did get a jury instruction as to it. We weren't allowed to have Mr. Clark Alfaro provide the background that was needed to evaluate the defense. We weren't allowed to have the witness. I'm just wondering if this was really, it would have changed the result. Do you think it was an harmful error? Absolutely, without question. We should have been able to present the eyewitness to the threats to explain why he didn't go to the authorities to help explain life in Tijuana. The eyewitness was called, though, wasn't he? He was, and his objections were sustained when we wanted him to explain why he didn't go to the authorities to help explain the facts. It would have supplemented your case. It would have laid a foundation for your witness testimony. Absolutely. Absolutely. Same thing with the father. I've got about 20 seconds. Do you want to reserve? I might as well. Thank you very much, Your Honor. Very good. We'll see what I can do in 20 seconds. Good morning. May it please the Court. My name is Doran Bishop. I represent the government in this matter. I'd like to first address the remarks of Judge McCown concerning 404B and why similarity was so vital to being introduced at trial. And the answer is it was vital because it was relevant. It was relevant specifically, Your Honor, because it showed more so that the defendant's entire story was a lie. The fact that he was a prior drug smuggler two years earlier under identical circumstances, truly identical circumstances, the same port of entry, marijuana, driver sole occupant, roughly the same amount of marijuana. Now, are you telling us that this goes on the issue of credibility? No. It does go on the issue of credibility. It does go to the issue of credibility and 404. Well, if it's on the issue of credibility, then you've got 609, haven't you? The existence of the felony is credibility. The nature of the felony is credibility as it applies to duress. And under Hearst, under the Hearst case. Well, this is a duress case. That's correct. It's a duress case. It's relevant now to duress. To rebut the defense of duress. Well, that's different than credibility. Is it, Your Honor? I think it is. Well, may I offer why I believe it's not? You can argue anything you want. Well, I'm going to offer why I believe it's not. Duress is a story. I got threatened on bringing drugs across. It's a story I've come up with six months after I got arrested and gave a full confession, but it's my story. Okay. The similarity of that prior crime is vital to negating that story. Under 404, it's more important in this type of case where duress is being asserted. What did the judge say? Did she admit it under 404B? Yes, Your Honor. Well, that's a discretionary call. Okay. And 609. And similarity, of course, is the first prong when intent is at issue for 404. See, the whole problem is that intent isn't at issue here. And they basically say, look, I got this marijuana. It's in my car. I drove it across. You don't have the normal situation like you do in Mayan or some of those other cases where the government needs to show knowledge or intent. You don't have any of that here. All you have is I did all this, but my story, as you say, is that I was threatened into doing it. And so what you're really using it for is impeachment, isn't it? I mean, it's because he did this before, so this story can't be true. The list, we're doing it to rebut the duress defense. Now, we can talk, I guess, metaphysically about whether intent is criminal intent or whether, as Judge O'Scanlan recently noted in Beasley, that duress is really a case called Beasley that is excusing once the elements have been established. But this is directly on point with Hearst. It's directly on point with Hooten, which is cited in our brief. Well, let me ask you about Hearst. You know, it's the one case we can all remember quite well. Yes. So I went back and read the facts of that case, and basically she comes up with this duress defense. But because, again, I believe it was a one-month time frame, she basically is doing another crime with these same people. It undercuts the duress aspect of this. It calls her credibility into question. Well, it doesn't. No. It does, but it does it precisely on the duress issue. As does this, Your Honor. No, but the difference here is under this theory, it seems to me that you're really using propensity evidence, and then you're trying to transform it into an attack on the duress. I at no time argued propensity, Your Honor. I never contended that this defendant has a predisposition to commit crime, that he is a bad guy, and see his prior drug attempt to show that. That's not why this was offered. It absolutely was offered to show he did it before voluntarily, and that makes it more likely that he did it again voluntarily. That is absolutely the purpose why I introduced it. It's not propensity evidence to me. No. It is not. Well, Your Honor, if I may explain. Well, when you say he did it again, I. Voluntarily. Yeah. You've got the propensity aspect, but as I understood your argument, it was a direct attack on his duress defense. In other words, it couldn't be duress, or not likely to be duress, because he did this on his own voluntarily before. That's right. And I'm focusing on the voluntarily word there, Your Honor. It was relevant in Hearst because it went to credibility under 404. It's relevant here because it goes to credibility under 404. Well, see, here's the thing is that in Hearst, she was linked up with the same people, and so I guess I'm having trouble making the leap. What you're really saying is he smuggled drugs before, straight up. He smuggled drugs now, and we don't think he did it under duress. And the reason we don't think he did it under duress is because he did it before, not under duress. Correct. It's more likely he was lying this time when he says that there was an accident. There was some threat that was made at the scene of the accident. There was a gun put to my head, and I was forced to smuggle drugs across this time. Relevance. More likely. It is simply more likely that he is. I think it's more likely that he was under duress because having learned his lesson the first time, he would be deterred from doing it a second time unless he was forced to do it. Now, I mean, that's the other counter there, isn't it? And I don't know if that's something that just the jury should hear, or that's a balancing thing for the judge to consider in whether or not it's more prejudicial and public. Well, that's an interesting point, Your Honor. I submit, of course, if that's the argument that the defendant wants to make, that would be properly submitted to a jury. But if I were a juror, I would want to know that. Not for reasons of. You're saying it does. Circumstantial evidence that this was not duress, and that was why you admitted it. You're not saying that the jury had to buy it. Right. Exactly, Your Honor. And I'm not saying that he's a bad guy. I mean, I could just as well say that by the fact that he was convicted. He was convicted of drug smuggling. Now, it doesn't make him more prone to be a bad guy that we introduce the similarities of these two crimes. Under 404B, isn't this a matter for the judge to weigh initially? It's absolutely a discretionary call. She did not weigh it, though, did she? Oh, she did, Your Honor. She said she found in not a lengthy manner, but she put on the record that she found that this was relevant, went to the issues. She discussed at length what issues under 404B it went to. Among them was absence of duress. She ruled on it. She did. And she found not too prejudicial as well. Okay. And if I may, and again, the issue of undue prejudice is also important here. Sometimes it is. Excuse me? Never mind. So from the government's point of view, there was no abuse of discretion here. To the contrary, the evidence was highly relevant. There was no argument based on propensity. Furthermore, there were limiting instructions given by the Court. And under Hearst and Hooten, a case I'd also note called Linzui Fei, F-E-I, that's 139F-1303, which was decided after Hearst and Dominguez-Mestiz. And Mr. Bishop, could you say that last case again, please? Yes, I'd be happy to. Okay. It's Lin, L-I-N, X-U-E, F-E-I. And it's 139F-3rd, 1303. The specific site is 1308. Thank you. This case basically responds to the argument that was raised by the defense, that Hearst is distinguishable because it was a burden of proof that was on the government back then, and now it's on the defense. Well, that case I just cited, in fact, follows Dominguez-Mestiz and says, you know, the burden of proof is on the government, but Hearst is still good law, and that goes to evidence. And it's apples and oranges to compare the two. So unless it requires further questions about the 404B issue and 609, I'll move on. Counsel, just let me remind you, before leaving the courtroom today, please fill out a little sheet which the deputy clerk will give you with that specific citation. I will, Judge Wisconsin. Thank you. I will. Thank you very much. Now, the next issue that Mr. Scott addressed was the instruction. And the test of an instruction, of course, is whether it fairly and accurately covers the issues presented, first. Second, whether it correctly states the law. And third, that it not be misleading when taken in the context of the whole of the other instructions. I don't think there can be any dispute that there was a correct statement of law made and that it fairly — well, and then the question I think what the counsel said was that it was accurately read from the text of the opinion, but he makes the point that that was improper because, in fact, the opinion went the other way. Well, the opinion found a tribal issue of fact, and it was not taken verbatim directly from the opinion. The word generally was, in fact, added at the beginning of the sentence, leaving additional leeway for the jury to find in favor of the defendant. Furthermore, so much focus has been placed upon that one sentence. I point out to the Court, and this is at Excerpts of Record, page 31, the actual instruction that was given. It emphasizes before saying that sentence that in making this determination, you are to consider all the facts and evidence in the case, including whether one in the defendant's position might believe that reporting the matter to the police did not represent a reasonable opportunity to escape. Now, that's put flat out that the jury can consider that. And then the sentence in dispute arrives, and then after that, the Court concludes by saying, in making the decision on reasonableness, you should consider all the facts and evidence in the case and the Court's instructions on the law. So it's not a purely objective test that's being laid out by the Court, and furthermore, the Court is inviting the jury to focus on the defendant's story and assess the credibility of it and take that into account in determining whether or not he had a reasonable opportunity to escape. That arguably is an aggressive interpretation of the law. Can I ask you another question? I guess I'm still a little troubled by 404. Certainly. Say a defendant gets into a fight, and he shoots somebody, and he gets convicted. Two years later, he gets into a fight with different people, and he shoots somebody, and he says self-defense. Can the first conviction come in with all its gory details under 404B? It would depend upon the gory details involved, which are inflammatory to it, but the details that came in here, you get to know about what happened. And yes, I think it can, Your Honor, under ---- You'd sort of say the same thing as here that, well, if he did it before and it wasn't self-defense, then he doesn't have a very good self-defense defense here. Well, it teaches his argument because he got into a fight before. Well, again, leaving aside the potentially prejudicial issues in terms of the facts, I would argue the more similar the two circumstances are, the more compelling it is to introduce that in order to rebut the intent-based defense of self-defense. And Hooten says point blank that in this Court, general intent crimes, you can negate the intent-based defenses by the introduction of other act evidence. It may be counterintuitive, but the more similar the two are, in fact, the more probative it is that the defendant is lying when he's saying, I did this in self-defense, or he's lying when he's saying, I did this under duress. So the fact that in Hearst, for example, the same people were involved is essentially perhaps more ---- the additional similarity, as you say, makes it more probative. And the fact that here maybe different people may have been involved makes it perhaps less probative. It's still probative. And I think as you ---- and the question recognizes the similarity of the two acts makes them more probative and more relevant to negating the duress defense. And in a way, that does go to credibility. But credibility is really what it's being offered to do to blow the defendant's story out of the water under 404. If you were convicted before and you had an alibi defense, and now you're going to face another prosecution and you trump up an alibi defense, or at least the prosecution thinks it's trumped up, do you get to introduce the prior one and kind of what went on? Because, you know, once trumped up an alibi defense, twice trumped up an alibi defense. Well, again, the risk that we're looking at is unfair prejudice to the defendant. I guess I would ask, what's the harm? What's the harm in presenting that to the jury? I haven't thought about that specific fact pattern, but what is the harm of presenting to the jury the specific details of the prior? Well, I guess, you know, I don't know if it's a question of harm, but the way 404 was constructed was under the general view that you only have prior acts evidence under very limited circumstances. I mean, we've made some kind of policy judgment there, so we're not going to make it anew. But the thought is, it's pretty easy to see that the reason is it slips off and becomes propensity evidence. I think that's the concern, isn't it? Yes, yes. And under the last hypo you've given, there apparently wasn't a conviction. That's why, in part, I believe that this Court recognizes that if it's properly admitted under 609, then any error under 404B is harmless. If it's properly admitted under 404B, any error under 609 is harmless. And there, I'd submit under the ---- But you would agree that the extent to which this was talked about was not admissible under 609? Yes. Yes, I would. I would. And I'd also say that the risk of propensity is reduced here because it's admissible under 609. So it goes to the prejudice prong. The likelihood of the jury being confused on a propensity theory is lessened because this was coming in anyway under 609. And the specific facts of this case, of the prior act, really don't make this defendant out to look more like an inveterate bad guy. It's not going to increase the likelihood the jury is going to convict. Like a drug smuggler is what it does. Well, he is a drug smuggler. And he was convicted of drug smuggling, which is determined to be a crime of veracity. And that's true. So does that answer your question? No. I'm 404. Thank you. All right. Now, on the final issue that was raised, that is the expert, there really are ---- This Court has recently addressed that in two cases. And I imagine Judge Bright might be familiar with one of them. He wrote an opinion in a case called Finley recently, which ---- Finley, I've heard of it. I thought you might have. But you didn't say anything about it in your brief. Well, I didn't know you'd be on the panel, Your Honor. Yes, I was. Let me get to what my concern is here. I'll ask you one question. Did you ask for a dower here? No. All right. So the second thing is you didn't ask for one, but the judge excluded this expert in Rule 16. Not on Rule 16. He said it probably wouldn't be helpful to the jury. Right. 401. Go ahead. 401, 403, and Rule 16. 401, it's not relevant. This is someone who is ---- There's no evidence he ever met with a defendant. Well, but he's talking about the society over in Mexico where this fellow is. And you know, the thing that bothers me, and I'm not saying that this is necessarily prejudicial, but I see cases all over the country in which the prosecutor brings some DEA expert or some policeman to tell you what the drug culture is all about and what the language means. We get that expert opinion in every case, and I'll allow it in every case. And this could be, in my view, maybe helpful to the jury. So why don't you answer that? I'd be happy to. We don't get to do that in the Ninth Circuit. It's very limited, the type of structure evidence that the government can present in drug cases. But getting to your point, he wasn't in Mexico, the defendant here. He was a U.S. citizen. He was family in Mexico. Yes. And this event occurred in Mexico, and he had been in Mexico a number of times. Yes, but the argument is this, the defense wants you to believe. First, this is someone, this defendant was assimilated to Mexican culture, and all Mexicans or anyone who is assimilated to Mexican culture has an inherent distrust of law enforcement. Both American and Mexican. Well, that enforces the argument of your opponent. How so? Because that's a... That enforces the argument of the opponent as to why he did not go to the Mexican police. Of course. And also, this witness was not allowed to testify as to why he didn't report what he saw going on, as I understand. Well, I don't know what witness he's referring to. The witness to the duress who was called to the stand, but he wasn't allowed to interrogate him about... Not true. ...why he didn't report this incident. No, the person who was with the defendant, Your Honor, in Mexico did not testify. There was some mention in the briefing that, well, we wish we could have gotten him here to testify. This is entirely uncorroborated. The only testimony of any witnessing of a threat came from the defendant himself. There's nothing by anyone that corroborates the statement of a threat. There's something showing that someone witnessed an accident that was a friend, a neighbor, former neighbor of the defendant, but nothing about anything that was said or any threat. Maybe I'm misunderstanding the argument, but I thought he said he was limited in what he could bring up from this witness. Maybe it was a neighbor. I was confused by that argument myself. Perhaps you can clarify that in the remaining 20 seconds. Thank you, counsel. Your time has expired. Thank you, Your Honor. As Mr. Bishop indicated, Mr. Scott, you have 20 seconds. I'll do my best, Your Honor. Maybe I'll have a few more than 20 seconds. I have a question. Mr. Bishop says that the reason this evidence can come in is that if he did it before voluntarily, then it's evidence that it's more likely he would do it voluntarily this time. Why isn't that a good argument? Because it's a propensity argument. I was actually going to use the hypotheticals of a shooter in a prior case. The shooting can then come in to show that it's more likely that he's the shooter in a subsequent case. Or a person who was convicted of a prior theft offense, for example, can then have that used against him to rebut an alibi defense later. That chain of reasoning, at its core, is propensity. It's simply you did it before. It makes it less likely for you to say that you did it again. It's explicitly and specifically what 404A is designed to preclude. It's saying that because you have done this kind of thing before, you're more likely to do it again. So the problem with that is that it leaves nothing of 404A, because you can hitch up that propensity argument to credibility and say, well, they put their credibility at issue essentially by pleading not guilty. That's the problem with that argument. Did you want to add anything further? I did, and I'm respectful of the time. But the witness that I'm talking about, his name is Christian Del Real, and that's ER pages 167 to 171. He witnessed the accident between these three drug smugglers and Mr. Verdusco. He saw them push Mr. Verdusco into the car. He saw them brandishing a gun at Mr. Verdusco. And it was that witness at about page 171, 172, that was not allowed to say why he didn't go to the authorities. There was an objection that was sustained, and it was stated that his mental state is not at issue. That was the reason that testimony was excluded. So with respect to the government, that is in the record. That's exactly what happened. And there was an eyewitness that corroborated these threats and the brandishing of the gun. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Bright , O'scannlain, McKeown